UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

|  |  |  |
|---|---|---|
| TYRONDA SPENCER, | ) | CASE NO. 1:13CV120 |
|  | ) |  |
| Plaintiff, | ) | JUDGE DONALD NUGENT |
| v. | ) | Magistrate Judge George J. Limbert |
|  | ) |  |
| CAROLYN COLVIN, | ) | **REPORT AND RECOMMENDATION** |
| COMMISSIONER OF | ) | **OF MAGISTRATE JUDGE** |
| SOCIAL SECURITY, | ) |  |
|  | ) |  |
| Defendant. | ) |  |

Tyronda Spencer ("Plaintiff") seeks judicial review of the final decision of Carolyn Colvin ("Defendant"), Commissioner of the Social Security Administration ("SSA"), denying her application for Supplemental Security Income ("SSI"). ECF Dkt. #1. For the following reasons, the undersigned recommends that the Court AFFIRM the Commissioner's decision and dismiss Plaintiff's complaint in its entirety with prejudice:

I.      **PROCEDURAL AND FACTUAL HISTORY**

After prior unsuccessful applications for social security benefits, Plaintiff filed an application for SSI on December 17, 2008 alleging disability beginning on May 21, 2007 due to mental illness, anxiety and depression. ECF Dkt. #15 at 134, 138, 152, 155, 159. The SSA denied Plaintiff's application at the initial stage and upon reconsideration. *Id*. at 60, 66. Plaintiff filed a request for an administrative hearing and on April 7, 2011, an ALJ conducted an administrative hearing. *Id*. at 25, 73. At the hearing, Plaintiff was represented by counsel and the ALJ heard testimony from Plaintiff and a vocational expert ("VE"). *Id*. at 25.

On April 28, 2011, the ALJ issued a decision denying benefits. ECF Dkt. #15 at 9-19. Plaintiff filed a request for review of the decision, but the Appeals Council denied the request. *Id*. at 1-5, 108-113, 223.

On January 17, 2013, Plaintiff filed the instant suit seeking review of the ALJ's decision. ECF Dkt. #1. On May 16, 2013, Plaintiff filed a brief on the merits. ECF Dkt. #19. On June 14,

2013, Defendant filed a brief on the merits.  ECF Dkt. #20.  Plaintiff filed a reply on June 28, 2013. ECF Dkt. #21.

## II.      SUMMARY OF RELEVANT PORTIONS OF ALJ'S DECISION

In his April 28, 2011 decision, the ALJ determined that Plaintiff suffered from dysthymic disorder, anxiety disorder, borderline intellectual functioning ("BIF") and a history of alcohol and marijuana abuse in reported remission.  ECF Dkt. #15 at 11.  He found that these impairments qualified as severe impairments under 20 C.F.R. § 416.920(c).  *Id.* The ALJ further determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listings").  *Id.* at 11-14.  He concluded that Plaintiff had the RFC to perform work at all exertional levels with the following limitations: simple, repetitive and routine tasks requiring the performance of only one or two steps; superficial, occasional contact with others and interacting in the public setting if not introduced to a large crowd; interacting with only small groups of familiar coworkers; infrequent workplace changes that are gradually introduced; non-confrontational, supportive supervision; and no strict production quotas or high production pace.  *Id.* at 14-17.

Based upon the RFC and the VE's testimony, the ALJ found that Plaintiff could perform jobs existing in significant numbers in the national economy, including the representative occupations of a garment sorter, garment folder, or an agriculture produce sorter.  ECF Dkt. #15 at 18.

## III.     RELEVANT MEDICAL HISTORY

On June 20, 2006, Ms. Lamp, a licensed social worker, noted that Plaintiff had her first appointment with her at Care Alliance and presented with major depression.  ECF Dkt. #15 at 341. Ms. Lamp indicated that Plaintiff reported past abuse and had major trust issues that she wished to work on, as well as wanting to decrease her depression.  *Id.*

On June 27, 2006, Dr. Stern completed an agency questionnaire indicating that he first evaluated Plaintiff on February 7, 2003 and last saw her on July 10, 2003.  ECF Dkt. #15 at 224-226. He indicated that Plaintiff reported long-term problems with depression and he observed that she had a depressed affect, felt overwhelmed and hopeless, and was anxious.  *Id.* at 224.  He observed her to have no breaks in reality and no problems with orientation.  *Id.*  As to her cognitive status, he

found that she had difficulty with concentration and she told him that she felt overwhelmed in caring for a handicapped son. *Id*. He described her daily activities as limited due to the virtually constant supervision she had to have over her son and her struggles to get services for him. *Id*. He found her self-care to be within normal limits and indicated that she was somewhat of an isolate based upon the limited information that he had. *Id*. He indicated that Plaintiff had difficulty trusting others, had a dysfunctional family and had a history of child abuse. *Id*. Dr. Stern found that Plaintiff was compliant with medication and appointments, but he could not determine whether her symptoms responded to treatment because his agency only treated her for six months. *Id*. at 225. He concluded that her ability to tolerate stress was not good because she had a tendency to take offense, she felt overwhelmed and her defenses were down. *Id*. He diagnosed Plaintiff with adjustment reaction with prolonged depressive reaction, adjustment disorder with mixed anxiety and depressed mood, and history of child maltreatment syndrome. *Id*.

Plaintiff reported trouble with anxiety and stress to her primary care physician on May 4, 2007. ECF Dkt. #15 at 321. Her doctor prescribed Zoloft. *Id*. On May 18, 2007, Plaintiff reported that she felt anxious around strangers and was not sleeping well. *Id*. at 322. Her doctor suspected a generalized anxiety disorder with depressive features and prescribed a trial period of Zoloft with counseling. *Id*. at 323.

Plaintiff failed to show for her next appointment but on July 23, 2007, Plaintiff followed up, indicating that she had no medication for the past three weeks. ECF Dkt. #15 at 325. She related that the Zoloft was effective, so her doctor prescribed Zoloft again and recommended counseling. *Id.* On August 23, 2007, Plaintiff did not show for her follow-up appointment. *Id.*

On November 30, 2007, Ms. Lamp wrote a letter indicating that Plaintiff was an established patient at Care Alliance but had not been seen by Ms. Lamp in over one year. ECF Dkt. #15 at 340. Ms. Lamp reported that Plaintiff had come in to obtain psychotropic medication at the clinic and the staff asked Ms. Lamp if such medication was indicated immediately for Plaintiff. *Id*. Ms. Lamp indicated that Plaintiff was oriented, with no suicidal or homicidal ideations, and Plaintiff told Ms. Lamp that sometimes the television talks to her. *Id*. Plaintiff also told Ms. Lamp that she was sleeping well and she was not having nightmares. *Id*. Ms. Lamp suggested that Plaintiff go to the

emergency room to get a psychiatric evaluation. *Id*.

In conjunction with her prior SSI application, Dr. Felker, a agency psychologist, performed a clinical interview and mental status examination on December 14, 2007. ECF Dkt. #15 at 231-234. Plaintiff reported that she was single and had five children ranging in age from 10 to 16 years old. *Id*. at 231. She indicated that none of the children were in her custody and her oldest child was described as autistic. *Id*. Plaintiff reported that she dropped out of school in ninth grade and her longest employment was at Subway in May of 2007 where she worked for nine months. *Id*. She stated that she had a short attention span, memory and concentration problems, problems understanding and following instructions, and problems completing tasks and getting along with others. *Id*. at 232. She also indicated that she also had problems handling stress. *Id*.

Plaintiff indicated that she usually wakes up before seven in the morning, she reads, writes and watches television, cleans her apartment and prepares her own meals, visits a friend who lives in her building, looks for work on some days, exercises, does laundry and visits with her children on the weekends. ECF Dkt. #15 at 233.

Dr. Felker found that Plaintiff was cooperative and not impulsive, her speech was somewhat pressured and more rapid than normal, and she responded to questions appropriately. ECF Dkt. #15 at 232. Plaintiff admitted to substance abuse, stating that she abused alcohol at one time but now drinks once or twice per month. *Id*. She indicated that she was somewhat depressed, occasionally irritable, and markedly anxious, especially when out in public. *Id*. She reported that her sleep was restless and interrupted, she had crying spells, and she never made a suicide attempt that required hospitalization but she did take many pills at one time in the past and felt ill afterward. *Id*.

Dr. Felker observed no delusional material in Plaintiff's mental content, and no evidence of paranoia. ECF Dkt. #15 at 232. Plaintiff reported no hallucinations to Dr. Felker, although she stated that she sometimes thought that newscasters on television were speaking directly to her and she often believed that people were watching her and commenting on her behavior. *Id*. Dr. Felker found no indication of impaired reality contact as Plaintiff recognized that her ideas were illogical and she understood that they were related to her anxiety. *Id*.

-4-

Dr. Felker found that Plaintiff was oriented to person, place and time, her attention span and ability to concentrate were somewhat restricted, she could not perform serial sevens without error, and her insight and judgment were somewhat restricted.  ECF Dkt. #15 at 233.

Dr. Felker diagnosed Plaintiff with generalized anxiety disorder and dysthymic disorder. ECF Dkt. #15 at 233.  She concluded that Plaintiff had mild to moderate impairment in the ability to concentrate, moderate impairment in working with peers and supervisors and tolerating the stress of employment, and no impairment in understanding and following instructions for one and two-step tasks.  *Id*.  She further indicated that Plaintiff had compromised ability to carry out tasks due to her anxiety and depressive symptoms and she had moderate to "possibly marked impairment" with anxiety and dysthymia in relating to others and dealing with the general public.  *Id*.  Dr. Felker assigned a Global Assessment of Functioning score of 53 ("GAF") to Plaintiff, which indicated moderate symptoms.  Diagnostic & Statistical Manual of Mental Disorders-Text Revision 34 (4th Ed. 2000)("DSM-IV-TR").

On December 17, 2007, Plaintiff presented for follow up and it was noted that she had been taking Zoloft with good results, but then stopped the medication for six weeks and started feeling depressed.  ECF Dkt. #15 at 329.  Zoloft was restarted.  *Id.*

On January 15, 2008, Dr. Waddell, an agency psychologist, reviewed the evidence of record and completed a psychiatric review technique form basing his review of Plaintiff's case on Listing 12.04 for affective disorders as to her dysthymic disorder and Listing 12.06 for anxiety-related disorders for her generalized anxiety disorder.  ECF Dkt. #15 at 237.  He opined that Plaintiff's impairments caused mild restrictions in daily living activities and moderate difficulties in maintaining social functioning and in maintaining concentration, persistence or pace.  *Id*. at 247. He also completed a MRFC assessment in which he found no evidence that Plaintiff had limitations in the categories of: remembering locations and work-like procedures; understanding, remembering, and executing very short and simple instructions; making simple work-related decisions; and in being aware of normal hazards and taking appropriate precautions.  *Id*. at 251-253.  He found that Plaintiff had no significant limitations in the categories of: understanding, remembering, and executing detailed instructions; performing activities within a schedule, maintaining regular

attendance, and being punctual; sustaining an ordinary routine without special supervision; asking simple questions or requesting assistance; accepting instructions and responding appropriately to criticism from supervisors; maintaining socially appropriate behavior; and setting realistic goals or making plans independently of others. *Id*. Dr. Waddell found that Plaintiff was moderately restricted in her abilities to: maintain attention and concentration for extended periods; work in coordination with or near others without being distracted by them; completing a normal workday and workweek without interruptions from psychologically based symptoms and performing at a consistent pace without an unreasonable number and length of rest periods; getting along with coworkers or peers without distracting them or exhibiting behavioral extremes; responding appropriately to changes in the work setting; and in traveling in unfamiliar places or using public transportation. *Id.*  Dr. Waddell indicated that Plaintiff was markedly limited in her ability to interact appropriately with the general public. *Id*. at 252.

On April 28, 2008, Dr. Belay, a psychologist, evaluated Plaintiff for the Bureau of Vocational Rehabilitation and administered psychological tests. ECF Dkt. #15 at 255.  He observed that Plaintiff had good eye contact, normal rate of speech and tone of voice, and she was quite cooperative although appeared somewhat tired.  *Id.*  Plaintiff reported that she was taking Zoloft, an antidepressant, and when asked about her current psychological state, she stated that she had "mental issues." *Id.* at 256.  She reported that she has suffered from depression since she was a child and had attempted suicide when she was 20 years old by taking an overdose of medication.  *Id.*

Plaintiff reported that she had past problems with alcohol and drugs, indicating that she had overused Ecstasy, marijuana and alcohol and had stopped using these drugs in August of 2007.  ECF Dkt. #15 at 256.  She indicated that she lost custody of all of her children due to neglect and drug usage five years prior but she sees her children on the weekends.  *Id.*

Plaintiff also indicated that she felt she had moderate depression and she became more depressed when she had to leave the house.  ECF Dkt. #15 at 256.  She stated that she felt dizzy and faint when she felt anxious, she avoided being around people, she had racing thoughts, and she admitted that she does things without thinking of the consequences.  *Id.*  She was taking a generic form of Zoloft prescribed by a free clinic and indicated that she does not receive any mental health

treatment beyond the prescription.  *Id.*  at 257.  She also indicated that sometimes she stops taking the medication because it makes her muscles stiff and she does not like to go to the free clinic because there are a lot of people there and the staff is not nice.  *Id.* at 256-257.

Dr. Belay found that Plaintiff was oriented and although she complained of attention and concentration problems, he found that Plaintiff had intact attention, concentration and memory throughout the testing process with him.  ECF Dkt. #15 at 260.  He noted a possible deficit in her short-term verbal memory.  *Id.*  He also found that Plaintiff had dull normal intelligence.  *Id.*  The Wechsler Abbreviated Scale of Intelligence revealed that Plaintiff had a full scale IQ of 77, which represents BIF.  *Id.* at 261.  She had a verbal IQ of 77 and performance IQ of 83.  *Id.*  The Wide Range Achievement Test-Revised 4 showed that Plaintiff could read at a sixth grade level, spell at a 6.7 grade level and perform math at a 6.1 grade level.  *Id.*

The Minnesota Multiphasic Personality Inventory -2 was also administered, but Dr. Belay indicated that Plaintiff responded in an invalid manner.  ECF Dkt. #15 at 261.  Dr. Belay noted that "[t]here was an exaggeration of symptoms that may actually reflect a 'cry for help.'"  *Id.*  He found that "[w]hat is clear is that Ms. Spencer was presenting herself as suffering serious psychological distress and that she holds the perception that she is not functioning well from a psychological perspective."  *Id.*

Dr. Belay diagnosed Plaintiff with early onset dysthymic disorder, alcohol, cannabis and other substance abuse, in remission, and BIF.  ECF Dkt. #15 at 262.  He assigned Plaintiff a GAF of 60, which indicated moderate symptoms, and he indicated that she most likely had an underlying personality disorder, but he was unable to formally diagnose her with such because of the invalid test results.  *Id.* at 263.  He was of the opinion that Plaintiff would benefit from more formal aggressive psychological and psychiatric intervention.  *Id.*  As to vocational interests, Dr. Belay noted that Plaintiff was best suited for artistic and enterprising areas such as performing and entertaining, religious activities and sales.  *Id.*  He indicated that Plaintiff would rather work with people rather than things.  *Id.*  He recommended on-the-job training or minimal academic requirements for her vocation.  *Id.* at 264.

-7-

On August 8, 2008, counselor Jeffrey Zola from the Ohio Rehabilitation Services Commission completed a form indicating that Plaintiff was "most significantly disabled." ECF Dkt. #15 at 271. He found that Plaintiff's impairments seriously limited her in interpersonal skills, self-care, self-direction and work tolerance. *Id*. He noted that Plaintiff had difficulty retaining jobs, interacting with others in personal relationships and had problems with decision making. *Id*. As to the "disabilities" that caused the substantial functional limitations, Mr. Zola checked "mental illness." *Id*.

On September 17, 2008, Ms. Lamp wrote a letter indicating that Plaintiff was a walk-in to the clinic and was an established patient at Care Alliance where she had previously been seen in the mental health department. ECF Dkt. #15 at 339. Ms. Lamp found Plaintiff to be oriented and depressed, with no suicidal or homicidal ideations. *Id*. Plaintiff reported feeling paranoid and unable to make even minor decisions. *Id*. Plaintiff related her desire to obtain SSI because she felt like she could not keep a job and Ms. Lamp agreed to help her work on the issue. *Id*.

On December 18, 2008, Plaintiff presented to her primary care physician for her depression diagnosis and completion of SSI paperwork. ECF Dkt. #15 at 336. Plaintiff wanted to restart Zoloft and her doctor prescribed it. *Id*.

On February 18, 2009, Plaintiff presented to the emergency room, complaining that Zoloft was not helping and she was feeling more depressed. ECF Dkt. #15 at 273. Plaintiff reported that she was afraid to go anywhere by herself and her children had been taken away from her because of their bad grades in school. *Id*. at 273-274. Plaintiff was alert, cooperative and oriented, but she was crying and did not make eye contact. *Id*. at 275. Plaintiff was discharged after a psychiatric social work consult was obtained and it was determined that she was safe to go home. *Id*. She was diagnosed with major depression. *Id*. at 278.

On February 24, 2009, Dr. House, a psychologist, evaluated Plaintiff at the request of the agency. ECF Dkt. #15 at 295. Plaintiff indicated that a friend had brought her to the examination. *Id*. at 296. Plaintiff related that she dropped out of school in the ninth grade due to "family issues" and she had five children and had custody of two of them. *Id*. Plaintiff informed Dr. House of her

-8-

recent emergency room visit and she told him that she was not taking any prescription medication for psychological or psychiatric purposes. *Id*. at 297.

Dr. House found Plaintiff oriented and observed Plaintiff's flow of conversation to be adequate, clear and coherent, and he found that she made adequate eye contact. ECF Dkt. #15 at 298. Plaintiff indicated that she slept okay and had a good appetite, but she was depressed on a daily basis and had crying episodes about three to four times per week or more. *Id.* She stated that when she went to the emergency room, she had no intent or plan to end her life or hurt another, but she had thoughts to end her life. *Id.* She reported that she had panic attacks when out in public and did not want to go out of the house by herself. *Id.* She stated that she counted letters compulsively and had posttraumatic stress issues relating to things that happened when she was younger and when her children were taken away from her. *Id.* She related that despite past abuses, she continued to have sexual interest and while she was not interested in sex psychologically, her "body has to have it." *Id.*

Dr. House noted no overt delusions, but found that Plaintiff had unusual thought content which showed that her insight was "strikingly low." ECF Dkt. #15 at 298. He found that she was not evasive, grandiose or suspicious and he noted that her reports of receiving messages through the television and people knowing her thoughts were reflective of excessive personalization as Plaintiff did not really believe that the television was telling her what to do or sending her special messages. *Id.* at 298-299. Dr. House found that Plaintiff had an unfocused quality of not being able to look at herself clearly. *Id.* at 299. While Plaintiff complained of auditory effects or visual effects, like hearing music or seeing shadows, Dr. House believed that Plaintiff was not hallucinating but experiencing illusory episodes of post-traumatic stress disorder. *Id.*

As to Plaintiff's sensorium and cognitive functioning, Dr. House found that Plaintiff's concentration and attention were inconsistent, but were most likely moderately limited. ECF Dkt. #15 at 299. He found her pace to be adequate and her memory for digits was borderline. *Id.* He also noted that Plaintiff's insight was moderately limited and her judgment was mildly limited. *Id.* He concluded that Plaintiff would need some supervision in managing her daily activities and financial affairs and indicated that her overall level of functioning was at a reduced level of

efficiency *Id.*

Dr. House diagnosed Plaintiff with panic disorder with agoraphobia, obsessive compulsive disorder, post-traumatic stress disorder, and polysubstance abuse in reported remission.  ECF Dkt. #15 at 300.  He opined that Plaintiff had moderate limitations in concentration and attention and no limitations in understanding and following directions on the surface, but she may have difficulty with following directions beyond three to four steps on a consistent basis due to her problems with concentration and attention.  *Id.*  He further opined that Plaintiff had moderate limitations in her ability to withstand stress and pressure and her ability to relate to others and deal with the general public "is at least moderately limited and more likely markedly limited due to agoraphobia."  *Id.*  Dr. House further concluded that Plaintiff's level of adaptability was mildly limited, her insight into her current situation was moderately limited, and her overall level of judgment was mildly limited.  *Id.* at 301.  He stated that Plaintiff would require some supervision in managing her daily activities and in handling her financial affairs.  *Id.*  He found that her overall level of functioning was at a reduced level of efficiency and assigned her a GAF of 43, which indicated serious symptoms. *Id.*  Dr. House reported that the GAF was based upon agoraphobia and Plaintiff's unusual illusory and personalization effects.  *Id.* at 302.  He opined that functionally, Plaintiff "also appears to be at a level of serious impairment in terms of socialization related to agoraphobia and also employability due to high levels of interpersonal sensitivity, although she is not overtly paranoid."  *Id.*

On April 18, 2009, agency psychologist Dr. Chambly reviewed the evidence of record and completed a MRFC and psychiatric review technique form basing her review on Listing 12.06 for anxiety-related disorders of PTSD, panic disorder and obsessive compulsive disorder and Listing 12.09 for substance addiction disorders.  ECF Dkt. #15 at 399-408.  Dr. Chambly opined that Plaintiff was mildly limited in her daily living activities due to her impairments, and moderately limited in maintaining social functioning and in maintaining concentration, persistence or pace.  *Id.* at 413.  She opined that Plaintiff's impairments caused no significant limitations in understanding and memory except she was moderately limited in executing detailed instructions.  *Id.* at 399.  Dr. Chambly further found that Plaintiff had no significant limitations in: maintaining attention and concentration for extended periods; sustaining an ordinary routine without special supervision;

-10-

making simple work-related decisions; asking simple questions or requesting assistance; getting along with coworkers or peers without distracting them or exhibiting behavioral extremes; maintaining socially appropriate behavior and adhering to basic standards of neatness and cleanliness; being aware of normal hazards and taking appropriate precautions; traveling in unfamiliar places or using public transportation; and in setting realistic goals or making plans independently of others. *Id.* at 399-400. She found that Plaintiff had moderate limitations in the categories of: understanding, remembering, and executing detailed instructions; performing activities within a schedule, maintaining regular attendance, and being punctual; working in coordination with or near others without being distracted by them; completing a normal workday and workweek without interruptions from psychologically based symptoms and performing at a consistent pace without an unreasonable number and length of rest periods; accepting instructions and responding appropriately to criticism from supervisors; and responding appropriately to changes in the work setting. *Id.* Dr. Chambly concluded that Plaintiff could understand and complete simple one and two step directions, focus for short periods on routine tasks, carry out simple tasks on a daily basis, and interact on a superficial basis in public settings if not introduced to a large crowd. *Id.* at 401. She further opined that Plaintiff could interact with small groups of familiar coworkers but would have problems taking direction from supervisors so she should not be under the direct management of a boss. *Id.*

On July 15, 2009, Ms. Lamp wrote a note indicating that Plaintiff was seen and found to be oriented with no suicidal or homicidal ideation. ECF Dkt. #15 at 393. However, Ms. Lamp's notes repeatedly refer to the masculine gender in describing Plaintiff. *Id.* She noted that Plaintiff "appears to be more focused on his alleged" trauma on the past and "believes that he should be entitled to SSI." *Id.* Ms. Lamp also stated that "[c]lient is struggling with controlling his anger and relating to people around him. Client is manifesting some paranoid ideations." *Id.*

On August 5, 2009, Plaintiff presented to her family practice clinic complaining of depression. ECF Dkt. #15 at 423. She indicated that she has had depression since the age of 8 with crying spells. *Id.* She stated that she experienced past trauma by family members and has homicidal ideations to harm people who upset her. *Id.* She stated that she cannot get along with people at

-11-

work because they think that she is short-tempered. *Id.* She indicated that she heard messages from the television and radio and felt that they were watching her and speaking directly to her. *Id.* She was taking Buspar and Zoloft as prescribed by a free clinic. *Id.* Upon evaluation, Plaintiff was found to have an appropriate affect with logical thought content and processes. *Id.* at 427. Plaintiff expressed suicidal ideation with no intent or plan. *Id.* She was diagnosed with depression with psychotic features and referred for a psychiatric evaluation. *Id.*

On September 9, 2009, Plaintiff presented to her family practice clinic to follow up on her anxiety complaints. ECF Dkt. #15 at 419. She stated that she took one day of the Seroquel that was prescribed for her with Zoloft but it made her tired. *Id.* She stated that she felt very panicked in social situations and she felt that people around her were driving fast on purpose. *Id.* She also indicated that she has flashes of thinking of things to hurt herself and has always had these flashes, but she tries to get the images out of her head. *Id.* She informed the nurse that she knows she would not do anything to hurt herself or others and she is trying to do positive things like becoming active in church. *Id.* She indicated that she had not yet scheduled an appointment with a mental health professional because she misunderstood prior instructions given to her. *Id.* Plaintiff was told to take the Seroquel at bedtime only, continue the Zoloft, and make an appointment with the psychiatric department. *Id.* at 421.

On September 22, 2009, Dr. Waddell reviewed Plaintiff's file and affirmed the mental assessment provided on April 18, 2009. ECF Dkt. #15 at 433.

On October 24, 2009, Dr. Rivera, an agency psychologist, reviewed the evidence of record and completed a MRFC and psychiatric review technique form based upon Listing 12.02 for organic mental disorders, Listing 12.04 for affective disorders, Listing 12.06 for anxiety-related disorders and Listing 12.09 for substance addiction disorders. ECF Dkt. #15 at 435. Dr. Rivera opined that Plaintiff was mildly limited in her daily living activities due to her impairments, and moderately limited in maintaining social functioning and in maintaining concentration, persistence or pace. *Id.* at 445. Dr. Rivera concluded that Plaintiff's impairments caused no significant limitations in understanding, remembering and carrying out short and simple instructions, but she was moderately limited in understanding, remembering and executing detailed instructions. *Id.* at 449. Dr. Rivera

-12-

further found that Plaintiff had no significant limitations in: performing activities within a schedule, maintaining regular attendance, and being punctual; sustaining an ordinary routine without special supervision; making simple work-related decisions; asking simple questions or requesting assistance; getting along with coworkers or peers without distracting them or exhibiting behavioral extremes; maintaining socially appropriate behavior and adhering to basic standards of neatness and cleanliness; traveling in unfamiliar places or using public transportation; and in setting realistic goals or making plans independently of others. *Id*. at 3449-450. Dr. Rivera found that Plaintiff had moderate limitations in the categories of: understanding, remembering, and executing detailed instructions; maintaining attention and concentration for extended periods; working in coordination with or near others without being distracted by them; completing a normal workday and workweek without interruptions from psychologically based symptoms and performing at a consistent pace without an unreasonable number and length of rest periods; accepting instructions and responding appropriately to criticism from supervisors; and responding appropriately to changes in the work setting. *Id.* Dr. Rivera concluded that Plaintiff could understand and complete simple one and two step directions, focus for short periods on routine tasks, carry out simple tasks on a daily basis, and interact on a superficial basis in public settings if not introduced to a large crowd. *Id*. at 452. She further opined that Plaintiff could interact with small groups of familiar coworkers but would have problems taking direction from supervisors. *Id.*

On March 26, 2011, Plaintiff referred herself for a diagnostic assessment with Ms. Edwards at Connections. ECF Dkt. #15 at 453-454. Plaintiff related that she was diagnosed with major depression in 2010 and she was prescribed Cymbalta but could not afford it. *Id*. at 454. She further reported that she had received services from the Free Clinic but stopped services and medications in 2009. *Id*. She indicated that she suffered from mental health issues her whole life and she lost custody of her children because she had issues providing for them. *Id*. She reported that she had dreams of working in the music business and moved her family to New York City in 2000 to start her music career. *Id.* She stated that she got more inspiration from celebrities than her family and escapes reality with her thoughts. *Id.* She reported feeling depressed every day, had crying spells, feels overwhelmed and anxious, has trouble leaving her home, and she isolates herself from other

people.  *Id.* at 458.

Upon examination, Plaintiff had full affect and a depressed mood at times.  ECF Dkt. #15 at 460.  She was oriented, had no plan to harm herself and last had suicidal ideations eight months ago.  *Id.*  Plaintiff was diagnosed with: depressive disorder, rule out major depressive disorder; anxiety states, rule out PTSD; and personality disorder not otherwise specified, rule out borderline personality disorder.  *Id.* at 461.  Plaintiff was referred for a psychiatric evaluation to determine if medication was needed and she was referred for counseling.  *Id.*

IV.    **SUMMARY OF TESTIMONIAL EVIDENCE**

At the hearing, Plaintiff indicated that her work periods were sporadic because she had social problems and anxiety.  ECF Dkt. #15 at 32.  She explained that she does not get along with people. *Id.* at 32-35.  She reported that she lived alone and was supported by her friends and family and one of her sons who was receiving SSI for whom she was an aide.  *Id.* 36.  She indicated that her other children also receive SSI as one of her sons is autistic with bipolar disorder and mental retardation, two of her other children have attention deficit hyperactivity disorder, and her fourteen year-old "hasn't been diagnosed yet, but she's also having anxiety problems as well."  *Id.* at 37.

Plaintiff explained that she dropped out of school in ninth grade due to abuse and she had unsuccessfully tried three times to obtain her GED.  ECF Dkt. #15 at 38.  She testified that she was given simple jobs when she did work because people knew that she was a slow learner.  *Id.* at 39. She reported that it would be difficult for her to go to work Monday through Friday because she would be nervous by herself and she did not like to leave her house.  *Id.* at 40.  She also indicated that she has depression every day and she has not taken her medication in awhile because when she did receive money, she had to pay rent or buy food.  *Id.* at 41.  She stated that the medication did help a little bit when she took it.  *Id.* at 41-42.  Plaintiff stated that she could perform job-related tasks, but she had to do it her way and at her own pace.  *Id.* at 42.  She also had problems with crying at least three times per day because she felt scared.  *Id.* at 46.

The ALJ thereafter questioned the VE and presented hypothetical individuals to the VE with various restrictions.  ECF Dkt. #15 at 46-49.  Plaintiff's attorney thereafter questioned the VE as well, adding restrictions to the hypothetical individuals presented by the ALJ.  *Id.* at 50-51.

-14-

## V.      STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to DIB and SSI.  These steps are:

1.    An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2.    An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3.    If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see 20 C.F.R.  § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

4.    If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

5.    If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992).  The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step.  *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

## VI.     STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability.  This Court's review of such a determination is limited in scope by § 205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g).  Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards.  *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990).

The substantial evidence standard requires the Court to affirm the Commissioner's findings if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to

-15-

support a conclusion." *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011), quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (citation omitted).  An ALJ's failure to follow agency rules and regulations "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Cole, supra*, citing *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir.2009) (citations omitted).  The Court cannot reverse the decision of an ALJ, even if substantial evidence exists in the record that would have supported an opposite conclusion, so long as substantial evidence supports the ALJ's conclusion.  *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 528 (6th Cir.1997).

**VII.**    **ANALYSIS**

    **A.**    **LISTING OF IMPAIRMENTS**

      Plaintiff first contends that the ALJ committed error at Step Three of the sequential evaluation because he failed to address whether her mental impairments met Listing 12.02 for organic mental disorders and he erred in finding that her impairments failed to meet paragraph B of Listings 12.04 and 12.06.  ECF Dkt. #19 at 2-8.

      In the third step of the analysis to determine a claimant's entitlement to DIB or SSI, it is the claimant's burden to bring forth evidence to establish that her impairments meet or are medically equivalent to a listed impairment.  *Evans v. Sec'y of Health & Human Servs.*, 820 F.2d 161, 164 (6th Cir. 1987).  To meet a listed impairment, the claimant must show that her impairment meets all of the requirements for a listed impairment.  *Hale v. Secretary,* 816 F.2d 1078, 1083 (6th Cir. 1987); 20 C.F.R. § 404.1525(d).  An impairment that meets only some of the medical criteria and not all does not qualify, despite its severity.  *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).  If a claimant does not meet a Listing, the sequential evaluation process continues and the ALJ then determines whether her impairment or combination of impairments is the medical equivalent of a listed impairment.  20 C.F.R. § 416.926(a).  An impairment is medically equivalent to a listed impairment "if it is at least equal in severity and duration to the criteria of any listed impairment." *Id.* An ALJ must compare medical evidence with the requirements for listed impairments at Step Three. *Id.*; *May v. Astrue*, No. 4:10CV1533, 2011 WL 3490186, at *7 (N.D.Ohio 2011).  Thus, the ALJ must "provide articulation of step three findings that will permit meaningful review of those findings."

*Franklin*, citing *Bledsoe v. Barnhart*, 165 Fed. App'x 408, 411 (6th Cir. 2006) and *Hunter v. Comm'r of Soc. Sec.*, No. 1:09CV2790, 2011 WL 6440762, at *3-4 (N.D. Ohio Dec. 20, 2011). "As a rule, the ALJ must build an accurate and logical bridge between the evidence and his conclusion." *Hernandez ex rel. L.A. v. Astrue*, No. 1:10CV1295, 2011 WL 4899960, at *6, citing *Fleischer v. Astrue*, 774 F.Supp.2d 875, 877 (N.D. Ohio 2011); *see also Wilson v. Comm'r of Soc.* Sec., 378 F.3d 541, 544-546 (6th Cir. 2004).

However, an ALJ's failure to explain how he reached his Step Three meets or equals conclusion can constitute harmless error where the review of the decision as a whole leads to the conclusion that no reasonable fact finder, following the correct procedure, could have resolved the factual matter in another manner. *See Hufstetler v. Comm'r of Soc. Sec.*, No. 1:10CV1196, 2011 WL 2461339, at *10 (N.D. Ohio June 17, 2011).

In the instant case, the ALJ addressed Listings 12.04, 12.05, 12.06 and 12.09 and compared the requirements of these Listings to Plaintiff's impairments and the medical evidence in the file. ECF Dkt. #15 at 11-14.  While Plaintiff cites to evidence that she believes constitutes substantial evidence to support a finding that her impairments met Listings 12.04 and 12.06, the standard in this case is whether the ALJ applied the proper standards and whether substantial evidence supports the ALJ's determination that her impairments did not meet the requirements of Listings 12.04 and 12.06.

The undersigned recommends that the Court find that the ALJ applied the proper legal standards and substantial evidence supports the ALJ's determination that Plaintiff's impairments did not meet paragraph B of Listings 12.04 and 12.06.  Listing 12.04 for affective disorders and Listing 12.06 for anxiety disorders both contain the same paragraph B criteria, which provides that the particular diagnostic criteria from each Listing result in

...at least two of the following:

1. Marked restriction of activities of daily living; or

2. Marked difficulties in maintaining social functioning; or

3. Marked difficulties in maintaining concentration, persistence, or pace; or

4. Repeated episodes of decompensation, each of extended duration.

Listing 12.04(B), 12.06(B).  In finding that Plaintiff's dysthymic disorder and anxiety disorder did

not meet the paragraph B criteria of Listings 12.04 and 12.06, the ALJ cited the four B criteria, set forth the definition of a "marked" restriction, and cited to evidence of record showing that Plaintiff had only mild restrictions in daily living activities, and moderate difficulties in social functioning and in concentration, persistence or pace.  ECF Dkt. #15 at 11-13.

In determining that Plaintiff had only mild limitations in her daily living activities, the ALJ cited to Plaintiff's 2008 function report where she indicated that she can prepare meals with several courses, clean, wash clothes, iron, care for her children on the weekends, spend time working and studying to get her GED, played music, watched television, ate in restaurants and went to church. ECF Dkt. #15 at 12.  Further, none of the agency psychologists found that Plaintiff was markedly or even moderately limited in her daily living activities due to her impairments, although Dr. House did find that Plaintiff would require some supervision in the management of her daily living activities and in the handling of her financial affairs. *Id*. at 16, citing ECF Dkt. #15 at 247, 301, 413, 445.  Accordingly, the undersigned recommends that the Court find that substantial evidence supports the ALJ's determination that Plaintiff's impairments caused mild limitations in her daily living activities.

As to difficulties in concentration, persistence or pace, the ALJ noted Plaintiff's allegation of such problems and cited to a February 2009 consultative examination in which Plaintiff's memory for digits was borderline and she was unable to complete serial sevens.  ECF Dkt. #15 at 12, citing ECF Dkt. #15 at 299.  However, the ALJ also noted Plaintiff's hearing testimony that she could focus and complete tasks at her own pace and he cited to Dr. Belay's 2008 psychological evaluation in which he found Plaintiff's attention, concentration and memory to be intact and adequate.  ECF Dkt. #15 at 12, citing ECF Dkt. #15 at 260.  Moreover, all three state agency psychologists found that Plaintiff's concentration, persistence or pace were at most moderately limited.  *Id.* at 233, 247, 260, 299, 413, 445.  Consequently, the undersigned recommends that the Court find substantial evidence supports the ALJ's determination that Plaintiff's concentration, persistence or pace were at most only moderately limited.

Regarding difficulties in social functioning, two agency examining psychologists suggested the possibility that Plaintiff had a moderate to marked degree of limitation in this category.  ECF Dk.

#15 at 233, 300.  Dr. House indicated that Plaintiff's ability to relate to others and to deal with the general public "is at least moderately limited and more likely markedly limited due to agoraphobia." *Id*. at 300.  Dr. Felker opined that Plaintiff had moderate to "possibly marked impairment" with anxiety and dysthymia in relating to others and in dealing with the general public.  *Id.* at 233.  The ALJ considered these opinions, but gave less weight to them based upon other findings that he made upon his review of the record.  *Id.* at 16-17.  The ALJ noted that while Plaintiff testified as to difficulty getting along with coworkers and new people and her attempts to isolate herself, she was able to visit a friend once per week, helped care for her friend's children, drove places with her friends, had close relationships with friends, ate in restaurants and went to church.  *Id*. at 12.  He also noted state agency reviewing psychologist Waddell's finding that Plaintiff had only moderate difficulties in maintaining social functioning, as well as the same findings by other agency reviewing sources.  *Id*. at 16, citing ECF Dkt. #15 at 247, 253, 400, 413, 433, 445.  Plaintiff points out that Dr. Waddell stated that she would experience a marked limitation in interacting with the general public.  ECF Dkt. #252.  However, Dr. Waddell nevertheless determined that Plaintiff was only moderately limited in social functioning overall and he opined that she would be limited to tasks that did not require much interaction with others.  *Id*. at 253.  Keeping the proper standard of review in mind, the undersigned recommends that the Court find that substantial evidence supports the ALJ's determination that Plaintiff's social functioning was only moderately limited.  Moreover, while an ALJ "'must consider findings of [s]tate agency medical and psychological consultants,' he is 'not bound by any findings made by [s]tate agency medical or psychological consultants.'" *Renfro v. Barnhart*, 30 F. App'x 431, 436 (6th Cir.2002) (quoting 20 C.F.R. § 404.1527(f)(2)(i)).

Plaintiff also asserts that her impairments meet Listing 12.02 and she complains that the ALJ did not specifically address Listing 12.02 in his Step Three analysis of her impairments.  ECF Dkt. #15 at 11-14.  However, the paragraph B criteria in Listing 12.02 is identical to those in Listings 12.04 and 12.06 that the undersigned already discussed.  Thus, even if the ALJ erred in not directly addressing Listing 12.02, the undersigned recommends that the Court find that any error was harmless because substantial evidence from the ALJ's paragraph B criteria analysis for Listings 12.04 and 12.06 equally applies to Plaintiff's assertion that she met the paragraph B criteria of this

Listing.

Moreover, even assuming as Plaintiff argues that her impairments caused marked restrictions in social functioning, she still fails to meet the requirement of paragraph B in Listings 12.02, 12.04, and 12.06 because she cannot show that she has marked restrictions in any additional category. In her reply brief, Plaintiff attempts to argue that her daily living activities are markedly restricted by her impairments and she argues that her impairments now medically equal some of the Listings. ECF Dkt. #21 at 3-5. However, substantial evidence supports the ALJ's determination that Plaintiff's impairments only mildly limited her daily living activities as no medical source has concluded that Plaintiff was markedly limited in this area. Further, issues raised for the first time in a reply brief are deemed waived. *See Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir.2008); *Hamilton v. Astrue*, No. 1:09CV260, 2010 WL 1032646, at *6 (N.D.Ohio Mar.17, 2010) ("A reply brief is a plaintiff's opportunity to respond to arguments raised for the first time in the defendant's brief. A plaintiff cannot wait until the reply brief to make new arguments, thus effectively depriving the opposing party of the opportunity to expose the weaknesses of plaintiff's arguments.").

### B.    NEW EVIDENCE

Plaintiff also cites to new evidence in the form of a letter from Plaintiff's GED tutor who states that Plaintiff cannot retain the information that he tries to teach her and she is "mentally disabled." ECF Dkt. #19 at 6 citing ECF Dkt. #15 at 222. Plaintiff also cites to records showing a new diagnosis of schizophrenia in April of 2012. ECF Dkt. #19 at 8, citing ECF Dkt. #15 at 474.

The undersigned recommends that the Court find that it cannot review this evidence because it is not considered part of the record for purposes of substantial evidence review as it was submitted to the Appeals Council after the ALJ's decision. *See Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001) ("this court has repeatedly held that evidence submitted to the Appeals Council after the ALJ's decision cannot be considered part of the record for purposes of substantial evidence review."), citing *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996).

To the extent that Plaintiff seeks a sentence six remand of her case based upon new and material evidence, the undersigned recommends that the Court deny such a request. Sentence six

of § 405(g) addresses situations where a claimant submits new evidence that was not presented to the ALJ but that could alter the ALJ's ultimate decision. Sentence six of §405(g) provides, in relevant part:

> The court ... may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding; and the Commissioner of Social Security shall, after the case is remanded, and after hearing such additional evidence if so ordered, modify or affirm the Commissioner's findings of fact or the Commissioner's decision, or both ...

42 U.S.C. § 405(g).  A "sentence six" remand is appropriate "only if the evidence is 'new' and 'material' and 'good cause' is shown for the failure to present the evidence to the ALJ." *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 276 (6th Cir.2010).  Evidence is "new" if it did not exist at the time of the administrative proceeding and "material" if there is a reasonable probability that a different result would have been reached if introduced during the original proceeding. *Id.*  "Good cause" is demonstrated by "a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ."  *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir.2001).  "The party seeking a remand bears the burden of showing that these [ ] requirements are met." *Hollon ex rel. Hollon v. Comm'r of Social Security*, 447 F.3d 477, 483 (6th Cir.2006).  Courts "are not free to dispense with these statutory requirements." *Hollon*, 447 F.3d at 486.

In a sentence-six remand, the court does not rule in any way on the correctness of the administrative decision, neither affirming, modifying, nor reversing the Commissioner's decision. *Melkonyan v. Sullivan*, 501 U.S. 89, 98, 111 S.Ct. 2157, 115 L.Ed.2d 78 (1991). "Rather, the court remands because new evidence has come to light that was not available to the claimant at the time of the administrative proceeding and that evidence might have changed the outcome of the prior proceeding." *Id.*

Here, the evidence of a new diagnosis submitted by Plaintiff post-dates the ALJ's decision by nearly a year, with the record of this possible diagnosis dated April 3, 2012 and the ALJ's decision dated April 28, 2011.  ECF Dkt. #15 at 19, 473-474.  Moreover, the record referred to by Plaintiff in her brief dated April 11, 2012 does not confirm a diagnosis, but indicates that Plaintiff was unsure of her "[s]chizophrenia/depression" diagnosis although it was on her "problem list in her

-21-

chart at Metro." ECF Dkt. #15 at 474. As pointed out by the Appeals Council, the proper course of action for Plaintiff would be to file a new claim based upon this new diagnosis. Insufficient support of the diagnosis and its limitations, as well as any connection, if any, to Plaintiff's mental impairments existing at the relevant time period in this case lead the undersigned to recommend that the Court find that it is not the basis for a sentence six remand.

The undersigned also recommends that the Court find that the letter from Plaintiff's GED tutor is not material. The tutor is not an acceptable medical source to render an opinion as to whether Plaintiff is mentally disabled. 20 C.F.R. § 416.913. Further, the ALJ found that Plaintiff had the severe impairment of BIF based upon evidence in the file from acceptable medical sources who conducted the appropriate testing in order to make such a determination. ECF Dkt. #15 at 11, 261. Accordingly, the Court should find that the GED tutor's opinion is not material.

### C.      VOCATIONAL EXPERT

Plaintiff also challenges the hypothetical questions presented by the ALJ to the VE and the VE's testimony. She contends that the ALJ did not place proper limitations on the types of jobs that the hypothetical person could perform as he failed to include the limiting aspects of her agoraphobia, her slow learning pace, and her absenteeism. ECF Dkt. #19 at 8-9. She also asserts that the VE failed to take into account her medical diagnosis of agoraphobia when determining the jobs that she could perform. *Id*.

The undersigned first notes that Plaintiff appears to make an argument that the ALJ should have limited her to a medium level of work because "[o]ne look at the claimant (ALJ Alexander was in St. Louis, we were in Cleveland) coupled with her long history of depression anxiety and PTSD and her agoraphobia problem would lead a reasonable person to conclude that the claimant could not do heavy labor." ECF Dkt. #19 at 10. However, Plaintiff fails to identify any specific medical records that would support such a conclusion. Moreover, she provides no support or analysis beyond this conclusory statement for the Court to find substantial evidence does not support the ALJ's finding that she could perform all exertional levels of work.

As to the hypothetical questions presented by the ALJ to the VE, hypothetical questions about a claimant's limitations must be supported by substantial evidence in the record. *See*

*Hardaway v. Sec'y of Health & Human Servs.*, 823 F.2d 922, 927 (6th Cir.1987) ("An ALJ may ask a vocational expert hypothetical questions, provided the question is supported by evidence in the record."). Conversely, an ALJ may decline to include limitations that are established by evidence the ALJ has determined is "not entitled to significant weight." *See Foster,* ,279 F.3d at 356, citing 20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3) ). The hypothetical questions must accurately describe all of a claimant's limitations. *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). However, they do not need to list each of the claimant's medical conditions. *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir.2004). Further, the hypothetical questions need only incorporate the limitations that the ALJ has deemed credible. *Parks v. Soc. Sec. Admin.*, 413 F. App'x 856, 865 (6th Cir.2011); *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir.1993).

Accordingly, the ALJ was not required to inform the VE of the agoraphobia diagnosis and the VE was not required or qualified to determine limitations that would result from a medical diagnosis before informing the ALJ of the jobs available for the hypothetical persons presented by the ALJ. Moreover, the ALJ presented the VE with the restrictions that he deemed credible resulting from Plaintiff's severe mental impairments, which included limiting her to simple, repetitive and routine tasks requiring only one or two steps, superficial, occasional contact with others and interacting in public settings if not introduced to a large crowd, a non-confrontational, supportive supervisor, infrequent workplace changes that are gradually introduced, no strict production quotas or high production pace, and interacting with small groups of familiar coworkers. ECF Dkt. #15 at 15, 48. The ALJ accommodated Plaintiff's pace difficulties by limiting jobs to no strict production quotas or high production paces, jobs that required only one or two steps, and tasks that were simple, repetitive and routine. *Id*. at 14. The ALJ also accommodated Plaintiff's moderate social limitations by restricting jobs to those with superficial, occasional contact with others, public settings only if not introduced in a large crowd, interacting with small groups of familiar coworkers, and non-confrontational, supportive supervisors. *Id.* Substantial evidence supports these limitations as they are those opined by agency reviewing psychologists Drs. Rivera and Chambly. *Id.* at 401, 452.

As to Plaintiff's complaint that the ALJ failed to incorporate an attendance limitation in his hypothetical questions to the VE, the undersigned recommends that the Court find that no error was committed.  Plaintiff's counsel did ask the VE if any jobs were available if a hypothetical person were absent from the job two days every other week due to depression or anxiety or fear of leaving the house.  ECF Dkt. #15 at 50.  The VE responded that no jobs would be available for such an individual.  *Id.*  However, no doctor opined that Plaintiff would be absent twice per week on a biweekly basis and therefore the ALJ was not required to incorporate such a limitation in his RFC for Plaintiff.

## VIII.   CONCLUSION AND RECOMMENDATION

For the foregoing reasons, the undersigned recommends that the Court AFFIRM the ALJ's decision and dismiss Plaintiff's complaint in its entirety with prejudice.


DATE: February 13, 2014                           */s/George J. Limbert*
                                                  GEORGE J. LIMBERT
                                                  UNITED STATES MAGISTRATE JUDGE


ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this notice.  Fed. R. Civ. P. 72; L.R. 72.3.  Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).